**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEOFFREY BLAIR HAJIM, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | Civil Action No: |
| v. | ) | |
| | ) | |
| ENDEMOL SHINE UK, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

NOW COMES Plaintiff GEOFFREY BLAIR HAJIM ("Mr. Hajim"), by and through his attorneys at Jayaram Law, Inc., and for his Complaint against the above-named Defendant, ENDEMOL SHINE UK ("Endemol Shine"), states as follows:

**Nature of the Action**

1. This is an action for copyright infringement brought by Plaintiff Geoffrey Blair Hajim, writer and director of the original screenplay and motion picture "Strange Frame," against the producer and distributor of the television show "Black Mirror." Mr. Hajim is the sole copyright owner of both the screenplay and the motion picture entitled "Strange Frame." Endemol Shine operates a number of production brands and divisions, including House of Tomorrow, the current producer of the television program "Black Mirror." This Complaint arises out of the production, distribution, and transmission of "Black Mirror" Episode 3 of Season 5, entitled "Rachel, Jack and Ashley Too" (the "Episode"). The Episode bears distinctive creative elements which are strikingly similar to those found in Mr. Hajim's "Strange Frame," reflect copying of Mr. Hajim's copyrighted work and infringement of Mr. Hajim's copyrights.

**Jurisdiction and Venue**

2.　This Court has jurisdiction under 28 U.S.C. § 1338(a), as it is an action arising under an Act of Congress relating to copyrights, namely the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

3.　This Court has personal jurisdiction over Endemol Shine because it is an international corporation with its principal place of business in London, England. Endemol Shine has had continuous and systematic general business contact in this District given that it disseminates its content to this District and the United States as a whole. By producing and distributing its entertainment content within this District, it reasonably should expect its conduct to have consequences in this District. Endemol Shine has caused harm to Mr. Hajim in this District considering Mr. Hajim has lost viewers and paying consumers in this District due to Endemol Shine's infringing conduct. Mr. Hajim's claims arise out of the conduct that gives rise to personal jurisdiction over Endemol Shine.

4.　Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3), which states that a non-US resident defendant may be sued in any judicial district.

**The Parties**

5.　Mr. Hajim, the writer and director of the work at issue, is the copyright owner and registrant of the "Strange Frame: Love & Sax" ("Strange Frame") screenplay. Mr. Hajim is also the owner, by assignment from Island Planet One Productions, LLC ("IPOP") and Shelly Doty, of the copyright in the motion picture.

6. Endemol Shine is part of the Endemol Shine Group, which is a global production and media company that produces and distributes multiplatform entertainment content. Endemol Shine has a registered address at The Shepherds Building, Charecroft Way, Hammersmith, London W14 0EE, UK.

**Background Allegations**

7. Mr. Hajim is the writer and director of the motion picture "Strange Frame."

8. Mr. Hajim is the copyright owner and registrant of the "Strange Frame" screenplay.

9. Mr. Hajim is also the owner of the copyright in the "Strange Frame" motion picture. As of the dissolution of IPOP on December 2, 2014, the assets therein, including the copyright to the "Strange Frame" motion picture, transferred to the sole shareholder, Mr. Hajim.

10. The copyrights in the screenplay and motion picture were registered with the U.S. Copyright Office in 2004 (Pau2-887-221) and 2012 (V3619D974), respectively.

11. "Strange Frame" was first exhibited theatrically in May 2012 in London, was available on Netflix from 2013-2015, and has been available on DVD since March 2013.

12. Among other accolades, the film won Best Feature Film at Dragon*Con in 2012 and Best Animated Feature at the Big Island Film Festival in 2013. The acclaim garnered by "Strange Frame" is reflected in its current IMDb rating of 7.1.

13. Endemol Shine operates a number of production brands and divisions, including House of Tomorrow, the current producer of the television program "Black Mirror."

14. The episode of "Black Mirror" at issue is Season 5, Episode 3, entitled "Rachel, Jack and Ashley Too."

15. The episode incorporates expressive content that bears striking similarities to Mr. Hajim's motion picture, "Strange Frame."

16. Set forth below are the striking similarities between the infringing Episode and Mr. Hajim's "Strange Frame":

> A. Both Ashley (the pop-star character from the Episode) and Naia (the pop-star character from Strange Frame) are edgy creatives whose managers replace them with AI versions of themselves, so they will produce music and perform as puppets of the Svengali-type manager.



> B. Both works feature a manager who masterminds the "downloading" of the pop-star characters' creative minds into an AI so that the AI version can perform while the real musicians are kept in a coma. Both managers plot to kill the actual musicians later.



C. Both works involve "digital transfers" of the creative mind of the musician to the AI version. Indeed, this process is depicted in both works while the antagonist-manager character engages in a monologue.

D. Both works use news interviews with the antagonist-managers about the new music that the incapacitated stars are releasing.



E. The AI-versions of the pop-stars in both works malfunction in front of the respective protagonists when confronted with a new reality.

F. In both instances, the physical star is being drugged and is being sustained by machines which keep her sedated.





G.  Both works contain plot points whereby the protagonist, who saves the pop-star, is tipped off as to the antagonist-manager's plan by the AI doppelganger of the star. In both works, this occurs first through subtle clues and then through an overt revelation on the day of the "big concert." After the situation is revealed to the protagonist, an AI version of the pop-star (little Ashley 2.0 in the Episode and Naia's AI in Strange Frame) helps the protagonist to locate the incapacitated body of the real-life popstar and rescue her. Tears are shed by the protagonist before the pop-star is unplugged from the machines.



H.  At the culminating "pop" performance of the AIs in each work, both the Ashley AI and the Naia AI are depicted in a highly similar fashion, wearing similar outfits, including the same color scheme.



I. Both works also feature remarkably similar exterior shots of the venue where the AI character is performing, including a virtual depiction of the character on the exterior of the venue.





J. Both the Episode and Strange Frame end with a musical performance of the 'new' band line up with the actual (non-AI) star restored to her place fronting the group.



17. A demand letter outlining the above issues was sent to John Parsons, General Counsel of Endemol Shine, on July 29, 2019, but no response was received. A follow up letter was sent on August 13, 2019, and no response to that letter was received either.

**Count I – Direct Copyright Infringement**

18. Mr. Hajim hereby re-alleges Paragraphs 1 through 17 as though fully set forth herein.

19. This is a count for direct copyright infringement against Endemol Shine, who violated the Copyright Act by infringing upon Mr. Hajim's exclusive rights in "Strange Frame" as granted in 17 U.S.C. §106.

20. "Strange Frame" is an original work of authorship and is fixed in a tangible medium of expression.

21. The screenplay of "Strange Frame" and the resulting motion picture are registered works which contain copyrightable subject matter under the laws of the United States.

22. Mr. Hajim is the copyright owner and registrant of the "Strange Frame" screenplay and the sole owner of the copyright in the motion picture and has the right to enforce the above copyrights.

23. Endemol Shine had access to the "Strange Frame" given the wide release (including in the UK where Endemol Shine is located), popularity, and critical acclaim of "Strange Frame."

24. Endemol Shine had a reasonable opportunity to see and copy "Strange Frame" considering that the Episode and "Strange Frame" were available on the same streaming service, Netflix.

25. After accessing "Strange Frame," Endemol Shine infringed on Mr. Hajim's exclusive rights by using strikingly similar plot elements, content, characters, scenery, and color schemes.

26. The striking similarities between the Episode and "Strange Frame" renders the Episode's independent creation unlikely.

27. Mr. Hajim has never granted Endemol Shine the authorization to copy, record, publish, perform, or make derivative works of Mr. Hajim's "Strange Frame."

28. Endemol Shine's conduct violates Mr. Hajim's exclusive rights under 17 U.S.C. §106 and constitutes infringement of Mr. Hajim's copyrights.

29. Endemol Shine knew or should have known that the use of Mr. Hajim's copyrights was unauthorized and unlawful.

30. The Episode's use of Mr. Hajim's expressive content constitutes an infringement of Mr. Hajim's copyrights.

31. Endemol Shine's infringement of Mr. Hajim's work is intentional and willful.

32. Endemol Shine's ongoing distribution and exploitation of the Episode and refusal to respond to communications from Mr. Hajim's counsel after receiving notice of Mr. Hajim's claim reflects Endemol Shine's bad faith and disregard for Mr. Hajim's rights.

33. By the actions described herein, Endemol Shine has damaged Mr. Hajim in an amount to be determined at trial and has unjustly enriched itself in an amount to be determined at trial.

**Count II – Vicarious Copyright Infringement**

34. Mr. Hajim repeats and re-alleges paragraphs 1 through 33 as though fully set forth herein.

35. At all relevant times, Endemol Shine, as the producer and distributor of the Episode, had the right and ability to supervise, control, or stop the infringing conduct described herein.

36. Endemol Shine had and continues to have a direct financial interest in, and to receive profit from, the infringing conduct described herein.

37. All of these acts violate Mr. Hajim's exclusive rights under 17 U.S.C. §106 and constitute infringement of his copyrights.

38. By its actions described herein, Endemol Shine has damaged Mr. Hajim in an amount to be determined at trial and has unjustly enriched itself in an amount to be determined at trial.

**WHEREFORE**, Mr. Hajim seeks entry of relief in his favor and against Endemol Shine as follows:

A. Declaring that Endemol Shine's unauthorized conduct violated and continues to violate Plaintiff's rights under 17 U.S.C. § 106;

B. Permanently enjoining Endemol Shine and its agents, employees, and affiliated companies from infringing Mr. Hajim's copyrights and, specifically, enjoining Endemol Shine from reproducing, selling, distributing, publicly performing, or making derivative works of Mr. Hajim's copyrighted works, including the Episode;

C. Ordering Endemol Shine to account for and disgorge to Mr. Hajim all gains, profits, and advantages derived by Endemol Shine's copyright infringement, pursuant to 17 U.S.C. § 504(b);

D. In the alternative, ordering Endemol Shine to pay to Mr. Hajim an award of statutory damages, pursuant to 17 U.S.C. § 504.

E. Ordering Endemol Shine to pay Mr. Hajim's reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. §505; and

F. Ordering such other and further relief the Court deems proper.

**Jury Demand**

Plaintiff Geoffrey Blair Hajim, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: October 17, 2019

Respectfully Submitted,

/s/ James E. Griffith

James E. Griffith, Esq.
Jayaram Law, Inc.
125 S. Clark St. Ste. 1175
Chicago, IL 60603
james@jayaramlaw.com
Tel: 312.212.8677